IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **TYRA D. CALLOWAY** | Case No. |
| Plaintiff | Judge: |
| -v- | **COMPLAINT W/JURY DEMAND** |
| **PHH MORTGAGE CORPORATION et al.** | |
| Defendant. | |

Now comes Plaintiff, TYRA D. CALLOWAY, by and through undersigned counsel, and states as follows:

**I.      JURISDICTION & VENUE**

1. Jurisdiction of this Court arises under 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq.* (RESPA), and the Truth in Lending Act, 15 U.S.C. §§1601, *et seq.* (TILA).

2. This action is also filed to enforce relations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014 including 12 C.F.R. §§1026, *et seq.* of Regulation X, as well as the FDCPA.

3. This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. §1367.

4. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b) because the Plaintiff resides in this judicial district, the property which is the subject of the mortgage is in this judicial district, and many of the fact relevant to this Complaint occurred in this judicial district.

**II.     INTRODUCTION & PARTIES**

1

5. In January of 2013, the Consumer Finance Protection Bureau ("CFPB") enacted a series of rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law No. 111-203, 124 Stat. 1376 (2010).

6. On January 17, 2013, the CFBP issued the Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (Feb. 14, 2013), and 78 F.R. 10695 (Feb. 14, 2013), which became effective on January 10, 2014.

7. The loan at issue in the present case is a "federally related mortgage loan" as that term is defined by 12 C.F.R. § 1024.2(b) and is owned by the Federal National Mortgage Association ("Fannie Mae").

8. PHH MORTGAGE CORPORATION (hereinafter, "PHH") is a non-resident mortgage company doing business in the state of Illinois. Defendant's principal place of business is located in the State of New Jersey. Defendant services the Note and Mortgage on Plaintiff's Property. The Note and Mortgage are hereafter collectively referred to as the "Loan."

9. PHH is, and was at all times relevant and material hereto, subject to the aforesaid Regulations, and does not qualify for the "small servicers" exception that is defined in 12 C.F.R. § 1-26.41(e)(4), nor the "qualified lender" exemption that is defined in 12 C.F.R. § 617.700.

10. Plaintiff, TYRA D. CALLOWAY, is a natural person who owns and resides at 136 Marshall Ave., Bellwood, IL 60104 (hereinafter, "the property"). Plaintiff is a borrower as that term is defined by the Real Estate Settlement Procedures Act ("RESPA").

11. Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), § 2605(t), 12 C.F.R. §1024.40, and §1024.41 for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

12. Plaintiff is asserting a claim for relief against PHH for breaches of the specific rules under Regulation X as set forth in Plaintiff's Complaint.

13. The conduct of the Defendant as set forth herein demonstrates a "pattern or practice" of non- compliance with the Real Estate Settlement and Procedures Act (RESPA) Regulation X for which liability may be imposed for actual and statutory damages, including counsel fees and costs, 12 U.S.C. §2605(f), and §2614, and 15 U.S.C §1640(a).

14. Plaintiff also asserts claims against PHH based upon state law for intentional and negligent misrepresentation and/or fraud.

### III. FACTUAL ALLEGATIONS

15. Plaintiff incorporates all the preceding paragraphs of the Complaint as if fully rewritten and restated herein.

16. On November 22, 2019, Defendant filed a foreclosure action against Plaintiff in the chancery Division of the Circuit Court of Cook County, Illinois, Case No. 2019CH13572 (hereinafter, "Foreclosure Case").

17. In the Foreclosure Case, Defendant alleges that Plaintiff defaulted on her Note and Mortgage.

18. Plaintiff's original loan was a 30 year, FHA backed, fixed interest loan in the amount of $107,211.00 that was originated with Blueleaf Lending, LLC, Limited Liability Company. (Hereinafter, "the Loan").

19. Since the Loan's origination, the Loan has been transferred and/or sold to different entities multiple times.

20. The Loan is presently being serviced by Defendant, PHH.

21. On July 7, 202, Plaintiff, through her foreclosure defense counsel, MJK Legal Group LLC (hereinafter, "foreclosure defense counsel") submitted an application for a loan modification. See Exhibit A.

22. On July 28, 2020, Plaintiff's loan modification application was approved and she was offered a trial modification plan. See Exhibit B.

23. Plaintiff successfully completed the trial modification plan and was offered a permanent loan modification on November 5, 2020. See Exhibit C.

24. In order to accept the permanent loan modification, Plaintiff was required to send the signed and notarized permanent loan modification documents and her first modification payment to PHH.

25. The executed permanent loan modification was due by November 23, 2020, and the first payment was set to begin on December 1, 2020.

26. However, the permanent loan modification documents were not given to Plaintiff's foreclosure defense counsel until November 18, 2020 leaving only five days to execute and return everything.

27. Because of the unreasonably short deadline, Plaintiff's foreclosure defense counsel contacted PHH on December 3, 2021 and spoke to a PHH representative named Cynthia who agreed to an extension and allegedly noted in the file that the documents would be delivered within the next couple of weeks.

28. On December 16, 2020, both the executed and notarized permanent loan modification documents, and the payment were delivered, in the same envelope, to PHH Mortgage Services, 1 Mortgage Way SV22, Mt. Laurel, NJ 08054. See Exhibits D and E.

29. On January 19, 2021, a mortgage statement was generated by PHH showing that the payment had been received and applied to the account. See Exhibit F.

30. Believing that her loan had been modified, Plaintiff continued to make her modified payments pursuant to the terms of the permanent loan modification. See Exhibit G.

31. On February 15, 2021, another mortgage statement was generated by PHH showing that additional payments had been received and applied to the account. See Exhibit H.

32. On or around February 25, 2021, after having not received a copy of the permanent loan modification documents executed by PHH, Plaintiff's foreclosure defense counsel reached out to PHH to inquire about the status and was told by a representative of PHH that the modification had been denied claiming that the modification paperwork had not been received on time, despite the fact that they had granted an extension.

33. It is typical for a loan servicer to accept executed modification documents later than the original stated date so long as the payment is made in the same month that it is due. In this instance, the payment was made in the same month that it was due, and an extension had been granted by PHH.

34. It was explained to PHH that the money order which PHH cashed and the executed mod agreements were in the same envelope and that PHH had to have received them, and the tracking information was provided to them. See Exhibits D and E.

35. Per PHH, the executed modification agreement and the payment were supposed to be sent to different addresses. However, PHH's representative confirmed that it was PHH policy to forward the signed modification paperwork to the modification department, even when the modification is sent to the payment address.

36. On April 9, 2021 PHH faxed a copy of the denial letter that they claimed that they had sent on February 16, 2021. See Exhibit I.

37. The February 16, 2021 denial letter was never received, but even if it had been sent on February 16, 2021 it was not sent timely because PHH took the December 2020 trial payment, the January 2021 trial payment, and the February 2021 trial payment before even bothering to send the alleged denial.

38. In an attempt to resolve the dispute, and because Defendant is required to give a reasonable opportunity to resolve any defects, Plaintiff executed a new set of permanent loan modification documents and re-sent them to PHH. The newly executed set of documents were delivered to PHH on March 1, 2021. See Exhibit K.

39. Plaintiff made all the required trial modification payments, and during this time, Plaintiff continued making her monthly mortgage payments pursuant to the terms of the agreement. See Exhibit G.

40. On April 9, 2021, Plaintiff's foreclosure defense counsel reached out to PHH asking that the denial be reversed since the newly executed documents had been delivered, however, Plaintiff's counsel was unable to obtain an answer.

41. On or around the same date, Defendant's counsel informed Plaintiff's foreclosure defense counsel that the permanent modification documents received on March 1, 2021 had a notary error, and because of the notary error, Plaintiff would have to start over and reapply.

42. Two sets of original executed loan modification agreements were delivered to Defendant on March 1, 2021. See Exhibit K. One of the sets contained no errors. The other set had a typographical error on the line where the notary public lists the date where the notary's commission expired. Instead of keeping the good set and asking Plaintiff to re-execute a second

copy and instead of providing time and an opportunity to correct the error, Defendant denied the modification.

43. On May 7, 2021, a Notice of Error was sent to Defendant for erroneously denying Plaintiff's loan modification and laying out several issues. See Exhibit L.

44. On May 12, 2021, Defendant acknowledged receipt of the May 7, 2021 Notice of Error and promised a response within thirty days. See Exhibit M.

45. Defendant failed to provide a written response to the May 7, 2021 Notice of Error which either corrected the error or explained why no error occurred.

46. On June 16, 2021, Plaintiff sent a Notice of Error for failure to respond to the May 7, 2021 Notice of Error. See Exhibit N.

47. On June 23, 2021, Defendant acknowledged receipt of the June 16, 2021 Notice of Error and promised a response within 30 days. See Exhibit O.

48. On June 28, 2021, Defendant issued a response to the June 16, 2021 Notice of Error claiming that they responded to the May 7, 2021 Notice of Error on May 27, 2021 and denying that any errors were made in the servicing and denial of Plaintiff's loan modification.

49. Neither the June 28, 2021 response, nor the May 27, 2021 response (a copy of which they included with the June 28, 2021 response) addressed all of the issues raised by Plaintiff.

50. Defendant failed to honor the extension that they granted to return the executed loan modification documents, and upon receipt of the executed loan modification documents, Defendant failed to follow its own policy to forward any executed loan modification documents to the proper department when they are sent to the payment address.

51. Plaintiff continued to pay the monthly payments pursuant to the terms of the agreement and attempted to cure any defects by re-executing and re-sending a new set of

permanent loan modification documents, but instead of providing Plaintiff with an opportunity to correct the document, Defendant denied the loan modification because the notary public made a typographical error on one of the two copies.

52. As a result of Defendant's actions, Plaintiff has incurred damages as she has had to pay a foreclosure defense attorney for a significantly longer period of time than she would normally have had to do so.

53. As a result of Defendant's actions, Plaintiff has had to endure substantial stress and anxiety as she continues to wonder whether she is going to lose her home to a foreclosure sale.

54. As a result of Defendant's actions, Plaintiff has had to hire a second lawyer to pursue the violations contained within this cause of action.

55. Defendant's conduct was willful, wanton and/or outrageous and/or grossly negligent as evidenced by the fact that Defendant continue to take Plaintiff's money, as evidenced by the fact that Defendant diverged from its standard operating policies, and as evidenced by their refusal to honor the agreements, and as evidenced by their failure to provide proper notice and to properly respond to notices of error.

56. Upon information and believe, Defendant has incentive to keep Plaintiff in default for as long as possible because loan servicers typically make more money while a borrower is in default than when they are current with a loan. In addition, Defendant can roll additional fees, charges, and interest into any new modified principal balance.

57. Because Defendant's conduct was willful, wanton and/or outrageous and/or grossly negligent, Plaintiff is seeking an award of punitive damages for Defendant's bad faith behavior.

**IV.  CLAIMS**

**COUNT ONE: VIOLATION OF 12 C.F.R. § 1024.35**
**(Failure to fully and/or properly respond to a Notice of Error)**

58. Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint as if fully rewritten and restated herein.

59. 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information ,including a telephone number, for further assistance" or "conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance".

60. 12 C.F.R. § 1024.35(e)(3)(i)(C) provides that, in regard to a notice of error submitted pursuant to 12 C.F.R. § 1024.35(b)(11), a servicer must comply with 12 C.F.R. § 1024.35(e)(1) no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the applicable notice of error prior to the date of a foreclosure sale, whichever is earlier.

61. PHH failed to provide a written response which either corrected the error or stated that there was no error and explain why, for Plaintiff's May 7, 2021 Notice of Error.

62. On June 30, 2021, in an effort to escape liability for failing to respond to the May 7, 2021 Notice of Error, PHH mailed a copy of a letter dated May 27, 2021 (hereinafter "May 27 Response") and claimed that PHH had previously sent the letter. See Exhibit P.

63. The letter claimed to be a response to the May 7, 2021 Notice of error, however the letter failed to meet the statutory requirement to conduct a reasonable investigation and/or to adequately state the reasons why it was determined that no error was found.

64. Defendant failed to conduct a reasonable investigation and/or to adequately state the reasons why it was determined that no error was found because:

   a. The May 27 Response fails to acknowledge that Defendant gave Plaintiff an extension of time to return the signed modification paperwork due to the fact that the modification offer was not even delivered to Plaintiff until November 20, 2020 (just three days before the deadline).

   b. The May 27 Response implies that the signed modification documents were delivered late when they were delivered within the extended deadline that Defendant had given.

   c. The May 27 Response claims that the Modification Agreement was not received at Defendant's West Palm Beach office on December 16, 2020 but fails to acknowledge that it was received by Defendant at its Mt. Laurel, NJ office, and that pursuant to Defendant's policy, the Mt. Laurel, NJ office was required to send the agreement to the West Palm Beach office.

   d. The May 27 Response fails to acknowledge that the payment, which was in the same envelope as the signed Modification Agreement was accepted and processed, as were several other payments thereafter.

   e. The May 27 Response fails to even mention or address the issue of the Notary stamp which was raised in the Notice of Error.

65. Had Defendant done a complete and thorough investigation into the matter, they would have discovered and been able to correct the error by reversing the loan modification denial.

66. Because Defendant did not conduct a complete and thorough investigation into the matter, Defendant is in violation of 12 C.F.R. § 1024.35(e)(1).

67. Even if a complete and thorough investigation into the matter would have yielded the same result, Defendant's response is incomplete because it failed to address all of the issues

raised in the Notice of Error and is therefore non-complaint with the statutory requirements of 12 C.F.R. § 1024.35(e)(1).

68. Sending the response to Plaintiff's May 7, 2021 Notice of Error on June 30, 2021 violated 12 C.F.R. § 1024.35(e)(3)(i)(C) because Defendant was required to send the response within 30 days.

69. As a result of PHH's failure to follow the RESPA regulations, Plaintiff has incurred and continues to incur actual damages in the form of additional attorneys' fees, additional stress and anxiety, and continues to face the possible loss of her home in the state level foreclosure action.

**COUNT TWO: VIOLATION OF 12 C.F.R. § 1024.41(d)**
**(Failure to send written notice as to why the loan modification application was denied)**

70. Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint as if fully rewritten and restated herein.

71. 12 C.F.R. § 1024.41(d) states, "Denial of loan modification options. If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria."

72. Two fully executed copies of the permanent loan modification documents were delivered to Defendant on March 1, 2021.

73. Both of the March 1, 2021 executed modification documents were rejected because one of the two fully executed permanent loan modification documents that were delivered contained a typographical error by the Notary Public.

11

74. PHH did not notify Plaintiff of this denial in writing. Instead, this information was provided by PHH's foreclosure lawyers.

75. The May 27 Response makes no mention of this error and contradicts the information that was provided.

76. PHH is required by statute to provide the specific reasons for any denial in writing, and Defendant has failed to do so.

77. PHH also violated 12 C.F.R. § 1024.41by failing to timely provide a proper denial letter when PHH decided not to accept the fully executed permanent modification documents that were delivered to them on December 16, 2020.

78. PHH continued to accept Plaintiff's modified payments as if they had accepted the agreement.

79. On April 9, 2021 PHH waited until April 9, 2021 to fax a copy of a denial letter that they had dated February 16, 2021. See Exhibit I.

80. Even if they had actually sent the February 16, 2021 denial letter (which they did not), it was untimely because Defendant claims that the denial occurred on November 23, 2021.

81. As a result of PHH's failures to follow the RESPA regulations, Plaintiff has incurred actual damages in the form of additional attorneys' fees and continues to face the possible loss of her inherited home.

### COUNT THREE: VIOLATION OF 12 C.F.R. § 1024.21(e)(1)
**(Failure to provide Plaintiff at least fourteen (14) days to accept the modification offer)**

82. 12 C.F.R. § 1024.21(e)(1) states, in pertinent part, "In general. Subject to paragraphs (e)(2)(ii) and (iii) of this section, if a complete loss mitigation application is received 90 days or more before a foreclosure sale, a servicer may require that a borrower accept or reject

an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower."

83. The permanent loan modification offer was provided to Plaintiff on November 18, 2021. See Exhibit Q.

84. Defendant required borrower to accept the modification on or before November 23, 2021 which only gave Plaintiff five (5) days to accept the offer. See Exhibit C.

85. Defendant is required to provide Plaintiff at least fourteen (14) days to accept the modification offer and because they did not, they violated the statute.

86. Plaintiff reached out to Defendant to obtain additional time to complete the acceptance requirements, and Defendant claimed that Plaintiff could have an additional two weeks from December 3, 2020 which would have extended the deadline until December 17, 2020.

87. The fully executed permanent modification documents were delivered to Defendant on December 16, 2020, but Defendant refused to honor the extension.

88. As a result of PHH's failure to follow the RESPA regulations, Plaintiff has incurred actual damages in the form of additional attorneys' fees and continues to face the possible loss of her inherited home.

**COUNT FOUR: VIOLATION OF 12 C.F.R. § 1024.41(e)(2)(ii)**
**(Failure to provide Borrower who has made timely payments with a reasonable time to fulfill any remaining requirements to accept the modification)**

89. 12 C.F.R. § 1024.41(e)(2)(ii) provides that a borrower who has completed all of the payments required under a trial loan modification plan, but has otherwise failed to satisfy the servicer's requirements, must be given a reasonable period of time to fulfill any remaining requirements.

90. Defendant failed to provide Plaintiff with a reasonable time to fulfill the remaining requirements by:

   a. Setting a deadline of less than fourteen days from the date the offer was provided to accept the offer;

   b. By verbally agreeing to an extension of time until December 17, 2020 and then refusing to honor the extension;

   c. By refusing to follow their own policies which require them to forward any executed modification documents that are received in the wrong office to the correct office;

   d. By refusing to accept the second set of fully executed documents delivered on March 1, 2021;

   e. By claiming there was a defect in the notary stamp of one of the sets of documents received on March 1, 2021, but not providing any time or opportunity at all to have them re-executed.

91. As a result of PHH's failure to follow the RESPA regulations, Plaintiff has incurred actual damages in the form of additional attorneys' fees and continues to face the possible loss of her inherited home.

## COUNT FIVE: INTENTIONAL FRAUDULENT MISREPRESENTATION

92. Plaintiff incorporates by reference all the preceding paragraphs of the Complaint as if fully rewritten and restated herein.

93. On December 3, 2020, PHH agreed to extend the deadline to accept the permanent loan modification offer until December 17, 2020.

94. Plaintiff relied upon this representation and continued to make the modified loan payments, even though she had already completed all of the trial modification payments, and to otherwise cooperate with the process to provide the fully executed permanent loan modification documents.

95. The executed permanent loan modification documents were received on December 16, 2020.

96. Upon receipt of the permanent loan modification documents, PHH determined that it was not going to honor the extension of time that was granted because the fully executed loan modification document was sent to the same address as the payment, instead of sending the fully executed loan modification document to the West Palm Beach office.

97. PHH intentionally disregarded its own policy to forward a fully executed loan modification documents to the correct office when they are received in the payment office.

98. In order to continue to collect payments from Plaintiff, PHH decided not to send a proper denial letter in a timely manner.

99. When Plaintiff sent a second fully executed set of permanent loan modification documents, even though PHH received at least one set which contained no errors, they refused to accept it despite the statutory requirements that they provide a reasonable time and opportunity to cure any defects.

100. Plaintiff's reliance upon these representations was justified as PHH failed to provide proper notice and continued to take Plaintiff's money which would not have occurred in a normal scenario where a loan modification is denied.

101. As a direct and proximate result of Defendant's misrepresentations, Plaintiff has suffered the out-of-pocket costs involved in spending months of paying a foreclosure defense attorney plus additional stress and anxiety that comes from not knowing whether or not she's going to lose her home. In addition, Plaintiff has had to hire a separate lawyer to bring this cause of action.

102. Upon information and belief, PHH profits when a loan is in default because any late fees that are generated are paid to PHH, giving PHH incentive to keep a loan in default as long as possible.

## COUNT SIX: NEGLIGENT MISREPRESENTATION

103. Plaintiff incorporates by reference all the precedent paragraphs of the Complaint as if fully rewritten and restated herein.

104. PHH failed to use reasonable care or competence when agreeing to the extension of time to provide the executed permanent loan modification documents because the PHH representative either failed to properly document the extension and/or pretended to have the power to grant an extension when they did not.

105. PHH failed to use reasonable care or competence when it failed to follow its own policy requiring them to forward the executed modification documents to the proper office if they are received in the payment office.

106. Plaintiff's reliance upon these representations was justified as both PHH as PHH behaved in a manner suggesting the loan modification was accepted by continuing to accept the modified payments, applying the payments to the account, and sending updated mortgage statements showing the money had been accepted.

107. As a direct and proximate result of Defendant's misrepresentations, Plaintiff has suffered the out-of-pocket costs involved in spending months of paying a foreclosure defense attorney plus additional stress and anxiety that comes from not knowing whether or not she's going to lose her home. In addition, Plaintiff has had to hire a separate lawyer to bring this cause of action.

108. Upon information and belief, PHH profits when a loan is in default because any late fees that are generated are paid to PHH, giving PHH incentive to keep a loan in default as long as possible, and further incentivizing PHH to make no changes to ensure that such negligence does not happen moving forward.

## V. PRAYER FOR RELIEF

**WHEREFORE**, THE Plaintiff respectfully requests this Honorable Court enter judgment as follows:

(a) For an award of statutory damages to be determined by the court, including, but not limited to:

  (i) for an award of statutory damages of $1,000 per occurrence for willful violation of 12 C.F.R. §1026.36.

  (ii) for an award of statutory damages of $1,000 per occurrence for willful violation of 12 C.F.R. §1024.35.

(b) for an award of actual damages incurred by Plaintiff in an amount to be determined at the trial of this matter.

(c) for an award of costs and reasonable attorneys' fees.

(d) For an award of punitive damages.

(e) For any other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Peter Cozmyk
Peter Cozmyk (0078862)
COZMYK LAW OFFICES, LLC
6100 Oak Tree Blvd. #200
Independence, OH 44131
(877) 570-4440
F: (216) 672-5261
Email: pcozmyk@cozmyklaw.com
*Attorney for Plaintiff*

## JURY DEMAND

That Plaintiff hereby respectfully requests a trial by Jury. U.S. Const. Amend 7. Fed.R.Civ.Proc. 38.

Respectfully submitted,

/s/ Peter Cozmyk
Peter Cozmyk (0078862)
COZMYK LAW OFFICES, LLC
6100 Oak Tree Blvd. #200
Independence, OH 44131
(877) 570-4440
F: (216) 672-5261
Email: pcozmyk@cozmyklaw.com
*Attorney for Plaintiff*